United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 31, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 24-90213 |
| STEWARD HEALTH CARE SYSTEM | § | |
| LLC, *et al.*, | § | CHAPTER 11 |
| | § | |
| Debtors. | § | |
| | § | |
| STEWARD HEALTH CARE SYSTEM | § | |
| LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 26-03094 |
| | § | |
| TENET HEALTHCARE | § | |
| CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER ON TENET HEALTHCARE CORPORATION'S MOTION TO DISMISS
(RE: ECF NO. 89)**

Tenet Healthcare Corporation moves to dismiss the Amended Complaint filed by Mark Kronfeld, Trustee of the SHC Creditor Litigation Trust.[1] Tenet argues that the Trustee's fraudulent transfer and disallowance claims should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[2] For the reasons explained below, the Amended Complaint is dismissed without prejudice with leave to amend on or before August 13, 2026.

**Background**

In June 2021, Steward Health Care System LLC and Tenet executed an Asset Purchase Agreement ("**APA**") for Steward's purchase of five Miami-area hospitals (the "**Hospitals**") for $1.1 billion.[3] The APA permitted Steward to assign the right to purchase associated real property. Steward did so by assigning that right to Medical Properties Trust, Inc. ("**MPT**").[4] MPT paid $925 million,

---

[1] Motion to Dismiss Adversary Proceeding, Adv. ECF No. 89.

[2] Rule 12(b)(6) is made applicable to adversary proceedings under Bankruptcy Rule 7012. FED. R. BANKR. P. 7012(b).

[3] Amended Complaint, Adv. ECF No. 76 ¶¶ 249−56.

[4] Amended Complaint, Adv. ECF No. 76 ¶¶ 251−53. Capitalized terms not defined herein have the meaning ascribed to them in the Amended Complaint.

representing $900 million of the purchase price and $25 million in acquisition expenses; Steward funded the remaining $208 million through debt.[5] MPT acquired the real property associated with the Hospitals and leased it back to Steward.[6] The transaction closed in August 2021.[7]

The Amended Complaint was filed against several defendants. The Trustee alleges that Steward obtained no independent valuation of the Hospitals and justified the purchase price by applying a 7.7 multiple to a projection that the Hospitals would generate $156 million in EBITDAR in 2021.[8] The Trustee alleges that this projection was at best wildly optimistic[9] and that the Hospitals later missed that projection by substantial margins and generated negative EBITDA of $103.1 million between the closing and the petition date.[10] The Trustee also alleges that Steward's former chief financial officer described the Hospitals as a "[r]avenous drain on liquidity" of between $200 and $300 million.[11] As to Steward's financial condition, the Trustee alleges that Steward's liabilities exceeded its assets by $1.65 billion at the end of May 2021 and by $1.54 billion at the end of August 2021, that Steward had substantial negative net working capital, and that Steward failed to pay identified creditors as their debts came due.[12]

Steward and its affiliates filed voluntary petitions under Chapter 11 in May 2024.[13] A plan was confirmed in July 2025.[14] During the bankruptcy cases, the operations of the Hospitals drew bids between $0 and $10 million and were ultimately transferred to Healthcare Systems of America-Florida LLC in exchange for the assumption of liabilities.[15]

The Trustee asserts two claims against Tenet. In Count 12 he seeks to avoid and recover the $1.1 billion paid in connection with the acquisition as a constructive fraudulent transfer under 11 U.S.C. § 544(b) and the Texas Uniform Fraudulent Transfer Act ("**TUFTA**"), Tex. Bus. & Com. Code § 24.001 *et seq.*[16] And in Count 14 he seeks disallowance of Tenet's claims against Steward under 11 U.S.C. § 502(d).[17]

---

[5] Amended Complaint, Adv. ECF No. 76 ¶ 254.

[6] Amended Complaint, Adv. ECF No. 76 ¶ 18.

[7] Amended Complaint, Adv. ECF No. 76 ¶¶ 18, 254−55.

[8] Amended Complaint, Adv. ECF No. 76 ¶¶ 259−60.

[9] Amended Complaint, Adv. ECF No. 76 ¶ 261.

[10] Amended Complaint, Adv. ECF No. 76 ¶¶ 265−66.

[11] Amended Complaint, Adv. ECF No. 76 ¶ 264.

[12] Amended Complaint, Adv. ECF No. 76 ¶¶ 273−77.

[13] Case No. 24-90213, ECF No. 1.

[14] Confirmation Order, Case No. 24-90213, ECF No. 5774.

[15] Amended Complaint, Adv. ECF No. 76 ¶¶ 267−69.

[16] Amended Complaint, Adv. ECF No. 76 ¶¶ 461−69. The Amended Complaint pleads, in the alternative, that the $208.9 million funded by Steward should be avoided. Adv. ECF No. 76 ¶ 468.

[17] Amended Complaint, Adv. ECF No. 76 ¶¶ 474−77.

## Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486−87 (2011). The Court also has jurisdiction over this dispute under the Confirmation Order entered in this case.

## Legal Standard

Federal Rule 8(a)(2), incorporated by Bankruptcy Rule 7008, requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). By requiring no more than a statement of the claim, Rule 8 establishes "implicitly, but with unmistakable clarity," that evidence of the claim is not required at the pleading stage. *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quoting *Hanna v. Plumer*, 380 U.S. 460, 470 (1965)). Unless the Federal Rules single out a claim for special treatment, Rule 8 "sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims." *Id.* at 194. Because constructive fraudulent transfer claims do not require proof of intent, they are governed by Rule 8(a) rather than Rule 9(b). *Sommers v. Capybara Capital, LLC (In re Anadrill Directional Servs. Inc.)*, No. 23-31199, 2026 WL 305023, at *5 (Bankr. S.D. Tex. Feb. 4, 2026).

On a motion under Rule 12(b)(6), this Court "asks only whether the complaint's factual allegations, if taken as true, 'state a claim to relief that is plausible on its face.'" *Berk*, 607 U.S. at 193 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

Two limits on that inquiry bear on this motion. First, the presumption of truth attaches to factual allegations, not to legal conclusions or to "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Second, improbability is not implausibility. A complaint that satisfies Rule 8 "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable." *Berk*, 607 U.S. at 193 (quoting *Twombly*, 550 U.S. at 556). Thus, the question at this stage is not whether the Trustee will or will not prevail. It is whether he has pleaded plausible claims against Tenet.

## Documents Considered

When evaluating whether a plaintiff has stated a claim, the Court generally may not consider matters outside the pleadings. FED. R. CIV. P. 12(d); *Berk*, 607 U.S. at 193; *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). A narrow exception permits consideration of a document attached to a motion to dismiss where the document is referred to in the complaint and is central to the plaintiff's claim. *Sligh v. City of Conroe*, 87 F.4th 290, 297 (5th Cir. 2023) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498−99 (5th Cir. 2000)). The rationale is that a plaintiff who builds his claim on a document has adopted it and may not describe it selectively while withholding it from a court.

The APA satisfies that exception.[18] The Amended Complaint pleads the terms of the transaction the APA memorializes, relies on the purchase price it fixes, and depends on the assignment provision permitting Steward to convey the right to purchase the real property to MPT. The Court considers the APA.

Tenet asks the Court to consider about thirteen more documents, including tax forms Tenet filed with the Internal Revenue Service, decisions of the Delaware Court of Chancery, a debtor-in-possession term sheet, first-day declarations and hearing transcripts, etc.[19] None is referred to in the Amended Complaint. Tenet invokes judicial notice, but judicial notice extends only to facts that are generally known or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 255 (5th Cir. 2021) (quoting FED. R. EVID. 201(b)). Where a public record is noticed, the notice establishes what the document says, not the truth of contested assertions within it. *Id.*

Tenet offers these documents not to establish that statements were made but to establish the value of the Hospitals in August 2021—an important contested fact in this proceeding. The Court may not consider them at this stage.

## Analysis

### Count 12 is Dismissed: The Amended Complaint Does Not Plead a Lack of Reasonably Equivalent Value

To state a constructive fraudulent transfer claim under TUFTA, a plaintiff must plead facts showing, among other things, a lack of reasonably equivalent value. *See In re Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019) (citing *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562, 566 & n.21 (Tex. 2016)); TEX. BUS. & COM. CODE §§ 24.005(a)(2), 24.006(a).[20]

---

[18] Asset Purchase Agreement, Adv. ECF No. 90.

[19] *See* Motion to Dismiss Adversary Proceeding, Adv. ECF No. 89 at 16−17 (tax forms); *id.* at 1−2, 12, 15 (Delaware decisions); *id.* at 3 (DIP term sheet); *id.* at 30−32 (first-day materials and pre-petition affidavit and transcript); *id.* at 22 (SEC filing); *id.* at 28 (third-party website).

[20] The Trustee proceeds under TUFTA by way of 11 U.S.C. § 544(b). Amended Complaint, Adv. ECF No. 76 ¶¶ 461−469.

TUFTA defines the operative term. Reasonably equivalent value "includes without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COM. CODE § 24.004(d). The Texas Supreme Court has explained that the statute's "use of the conditional past-perfect tense 'would have' illustrates [that] whether an exchange was made for reasonably equivalent value is evaluated objectively at the time of the transfer, not in retrospect." *Janvey*, 487 S.W.3d at 574. The inquiry is thus fixed at the moment of exchange.

The Amended Complaint does not plead facts establishing the inference that Steward received less than reasonably equivalent value at the moment of the transaction. The Trustee alleges that the Hospitals "were worth far less than the Tenet Payment, and in fact, had no value or negative value."[21] That is a conclusion, and conclusions are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. The question is what alleged facts support it.

The Trustee also alleges what Steward projected, alleges that the projection was untethered from historical performance, and alleges what the Hospitals earned in the years that followed.[22] Steward, however, did not purchase a projection. Under the APA it acquired real property, net working capital, accounts receivable, inventories, equipment, leasehold improvements, and goodwill, among other assets. It then assigned the right to acquire the real property to MPT for $925 million.[23] The Amended Complaint pleads that figure, but nothing of its own for the real property, for net working capital, for equipment or leasehold improvements, or for receivables. There are no allegations of what any of it was worth in August 2021.[24]

The absence of such allegations is important because the APA on which the Amended Complaint relies fixes a target net working capital of $100 million and provides a mechanism to adjust the purchase price according to the working capital delivered.[25] The Trustee pleads the purchase price without adjustment. In other words, he pleads no allegation about what was delivered. And a claim that a debtor paid more than assets were worth requires allegations about what the assets were worth. Courts have dismissed constructive fraudulent transfer claims on precisely this ground. *See Faulkner v. Lone Star Car Brokering, LLC (In re Reagor-Dykes Motors, LP)*, No. 18-50214, 2021 WL 2546664, at *4 (Bankr. N.D. Tex. June 21, 2021); *Seidel v. Winston & Strawn LLP* (*In re With Purpose Inc.*), No. 23-30246, 2026 WL 1011282, at *15−16 (Bankr. N.D. Tex. Apr. 14, 2026); *see also O'Toole v. Karnani (In re Trinsum Grp., Inc.)*, 460 B.R. 379, 393 (Bankr. S.D.N.Y. 2011)

---

[21] Amended Complaint, Adv. ECF No. 76 ¶ 465.

[22] Amended Complaint, Adv. ECF No. 76 ¶¶ 259−61.

[23] Amended Complaint, Adv. ECF No. 76 ¶ 18.

[24] The Court does not decide here whether the $925 million MPT paid establishes the value of the real property. The Trustee says that the price reflects the capitalized value of the lease stream rather than the value of the real estate. Trustee Opposition to Motion to Dismiss, Adv. ECF No. 137 at 9−10. The point at this stage is that the Amended Complaint supplies no figure of its own for the value of the real estate.

[25] Asset Purchase Agreement, Adv. ECF No. 90 at 11−12.

(dismissing where "there [were] no facts in the pleadings regarding how much the stock was worth at the time of the transfers"). This is not a demand for evidence that the Federal Rules forbid. It is a requirement that the amended complaint contain factual allegations addressed to an element of the claim.

## Post-Transfer Performance Does Not Bear on Value at the Time of Transfer

The allegations the Trustee does make are directed almost entirely at events after August 2021. That is a legal problem, not just an evidentiary one.

The Amended Complaint alleges that the Hospitals missed Steward's projections in the years after the acquisition and generated negative EBITDA.[26] Under *Janvey*, those facts do not speak to the question TUFTA asks. Value is measured at the exchange, "without the wisdom hindsight often brings." 487 S.W.3d at 582. A transaction is not converted into a fraudulent transfer because the acquired business later performed poorly.

The gap between the alleged transfer and the performance is also covered by intervening events the Amended Complaint itself pleads. For example, Steward conveyed the real property to MPT and took back long-term leases the Trustee alleges were overpriced. And most of the allegations are about conduct by Steward's officers—mismanagement and self-dealing—that the Trustee alleges drove the Steward companies into bankruptcy. The Trustee wants the Court to infer from results produced under those conditions that the assets were worth nothing when they were sold. Even drawing every reasonable inference in his favor, the allegations in the Amended Complaint do not support that step.

The same is true of the bankruptcy sale. Showing that operations drew bids between $0 and $10 million in 2024[27] says little or nothing about their value in 2021. For example, in 2024 the real property had been conveyed away, the operations were encumbered by leases the Trustee alleges were above market, and the business had been managed for three years in the manner the Amended Complaint describes at length. It is not a reasonable inference that Tenet assets sold in 2021 were the assets sold in the bankruptcy cases in 2024.

Thus, because the Trustee has not pleaded a lack of reasonably equivalent value, the constructive fraudulent transfer claim must be dismissed. The Court need not reach the second element to resolve the motion, and it does not do so.

## Count 14 is Dismissed

The Trustee's claim under 11 U.S.C. § 502(d) is, as he acknowledges, derivative of the avoidance claim. Section 502(d) directs disallowance of the claim of an entity that is "a transferee of a transfer avoidable under section . . . 544." A trustee need not obtain a judgment on the avoidance claim before pleading

---

[26] Amended Complaint, Adv. ECF No. 76 ¶¶ 265−66.
[27] Amended Complaint, Adv. ECF No. 76 ¶¶ 267−69.

disallowance; the two may be asserted together. *In re Life Partners Holdings*, 926 F.3d at 122. But where the avoidance claim is dismissed, the disallowance claim is dismissed with it. *Id.* Thus, the § 502(d) claim is dismissed without prejudice on that basis.

### Leave to Amend

Rule 15(a)(2) directs that leave to amend be freely given when justice so requires. "When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable." *Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013).

Tenet argues that amendment would be futile. The Court disagrees. If the Trustee can make new or better allegations, the defect may be cured. Thus, the Court will grant the Trustee an opportunity to file another amended complaint.

### Conclusion

For the reasons stated above, it is ORDERED that:

1. Tenet's motion to dismiss is granted as to Counts 12 and 14 of the Amended Complaint without prejudice.

2. The Trustee is granted leave to file a further Amended Complaint by August 13, 2026.

Signed:  July 31, 2026

_____
Christopher Lopez
United States Bankruptcy Judge