United States Bankruptcy Court
Southern District of Texas
**ENTERED**
November 20, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO: 24-90213** |
| **STEWARD HEALTH CARE SYSTEM LLC, *et al.*,** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **Debtors.** | § | |
| | § | |
| **STEWARD HEALTH CARE SYSTEM LLC, *et al.*,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 26-03094** |
| | § | |
| **TENET HEALTHCARE CORPORATION, *et al.*,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER ON TENET HEALTHCARE CORPORATION'S SECOND MOTION TO DISMISS (RE: ECF NO. 171)

Mark Kronfeld is the Trustee of the SHC Creditor Litigation Trust. The Trust is the successor to the litigation rights asserted in this case.

The Trustee started this adversary proceeding seeking to avoid and recover certain transactions as actual and constructive fraudulent transfers, disallowance of certain claims, and for damages based on alleged breaches of fiduciary duties, tortious interference with contracts, and breaches of contracts.[1]

Tenet Healthcare Corporation moved to dismiss the constructive fraudulent transfer and disallowance claims asserted in an Amended Complaint under Federal Rule 12(b)(6).[2] In July 2026, the Court issued an order dismissing those claims and permitting the Trustee to file a second amended complaint.[3] In August, the Trustee

[1] Amended Complaint, Adv. ECF No. 76.
[2] Motion to Dismiss Adversary Proceeding, Adv. ECF No. 89; Rule 12(b)(6) is made applicable to adversary proceedings under Bankruptcy Rule 7012. FED. R. BANKR. P. 7012(b).
[3] Order Regarding Motion to Dismiss, Adv. ECF No. 157.

filed a Second Amended Complaint.[4] Tenet then filed a Motion to Dismiss the Second Amended Complaint under Rule 12(b)(6).[5] The Trustee opposes dismissal.[6]

This time the Court agrees with the Trustee. For the reasons explained below, the Second Motion to Dismiss is denied.

## Background

In June 2021, Steward Health Care System LLC and Tenet executed an Asset Purchase Agreement ("**APA**") for Steward's purchase of five Miami-area hospitals (the "**Hospitals**") for $1.1 billion.[7] The APA permitted Steward to assign the right to purchase associated real property. Steward did so by assigning that right to Medical Properties Trust, Inc. ("**MPT**").[8] MPT paid $925 million, representing $900 million of the purchase price and $25 million in acquisition expenses; Steward funded the remaining $208 million through debt.[9] MPT acquired the real property associated with the Hospitals and leased it back to Steward.[10] The transaction closed in August 2021.[11]

Steward and its affiliates filed voluntary petitions under Chapter 11 in May 2024.[12] A plan was confirmed in July 2025.[13] During the bankruptcy cases, the operations of the Hospitals drew bids between $0 and $10 million and were ultimately transferred to Healthcare Systems of America-Florida LLC in exchange for the assumption of liabilities.[14]

The Amended Complaint in the adversary proceeding was filed against several defendants. The Trustee alleged that Steward obtained no independent valuation of the Hospitals and justified the purchase price by applying a 7.7 multiple to a projection that the Hospitals would generate $156 million in EBITDAR in 2021.[15] The Trustee alleged that this projection was at best wildly optimistic[16] and that the Hospitals later missed that projection by substantial margins and generated negative EBITDA of $103.1 million between the closing and the petition date.[17] The Trustee also alleged that Steward's former chief financial

---

[4] Second Amended Complaint, Adv. ECF No. 164.
[5] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171.
[6] Opposition to Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174.
[7] Amended Complaint, Adv. ECF No. 76 ¶¶ 249–56.
[8] Amended Complaint, Adv. ECF No. 76 ¶¶ 251–53.
[9] Amended Complaint, Adv. ECF No. 76 ¶¶ 254–55.
[10] Amended Complaint, Adv. ECF No. 76 ¶ 18.
[11] Amended Complaint, Adv. ECF No. 76 ¶¶ 18, 254–56.
[12] Case No. 24-90213, ECF No. 1.
[13] Confirmation Order, Case No. 24-90213, ECF No. 5774.
[14] Amended Complaint, Adv. ECF No. 76 ¶¶ 267–69.
[15] Amended Complaint, Adv. ECF No. 76 ¶¶ 259–60.
[16] Amended Complaint, Adv. ECF No. 76 ¶ 261.
[17] Amended Complaint, Adv. ECF No. 76 ¶¶ 265–66.

officer described the Hospitals as a "[r]avenous drain on liquidity" of between $200 and $300 million.[18]

The Trustee asserted two claims against Tenet. In Count 12 he sought to avoid and recover the $1.1 billion paid in connection with the acquisition, or alternatively, the $208 million that Steward transferred, as a constructive fraudulent transfer under 11 U.S.C. § 544(b) and the Texas Uniform Fraudulent Transfer Act ("**TUFTA**"), TEX. BUS. & COM. CODE § 24.001 *et seq.*[19] And in Count 14 he sought disallowance of Tenet's claims against Steward under 11 U.S.C. § 502(d).[20]

Tenet argued that Count 12 should be dismissed because there was no allegation of what the assets, including the real estate, net working capital, and physical equipment were worth on the closing date.[21] The allegations in the Amended Complaint, Tenet argued, demonstrated that Steward received reasonably equivalent value at the time of the sale, but later mismanaged the hospitals.[22] Looking at the value of the assets on the closing date, Tenet alleged that the real estate and net working capital alone had a value of $1.025 billion.[23] Tenet argued the Trustee's arguments based on Steward's underperformance of its projections were irrelevant, because reasonably equivalent value must be measured at the time of the transaction and not by post-sale performance.[24] As to Steward's financial condition, Tenet argued the APA did not create debts beyond Steward's ability to pay, but that the Tenet transaction improved Steward's financial position.[25]

Tenet argued that Count 14 should be dismissed because the claim for disallowance was premature, and a transferee must be first determined liable.[26]

In July 2026, the Court granted the motion to dismiss and dismissed Count 12 and 14 without prejudice.[27] For Count 12, the Court found that the Amended Complaint did not plead a lack of reasonably equivalent value at the moment of the transaction.[28] The Amended Complaint did not allege the value of the real property, net working capital, equipment, leasehold improvements, or receivables in August 2021.[29] The Court also dismissed Count 14 because the avoidance claim was dismissed.[30]

---

[18] Amended Complaint, Adv. ECF No. 76 ¶ 264.
[19] Amended Complaint, Adv. ECF No. 76 ¶¶ 461–69. The Amended Complaint pleads, in the alternative, that the $208.9 million funded by Steward should be avoided. Adv. ECF No. 76 ¶ 469.
[20] Amended Complaint, Adv. ECF No. 76 ¶¶ 474–77.
[21] Motion to Dismiss Adversary Proceeding, Adv. ECF No. 89 at 13, 18.
[22] Motion to Dismiss Adversary Proceeding, Adv. ECF No. 89 at 13.
[23] Motion to Dismiss Adversary Proceeding, Adv. ECF No. 89 at 15.
[24] Motion to Dismiss Adversary Proceeding, Adv. ECF No. 89 at 23–25.
[25] Motion to Dismiss Adversary Proceeding, Adv. ECF No. 89 at 33–34.
[26] Motion to Dismiss Adversary Proceeding, Adv. ECF No. 89 at 34–35.
[27] Order Regarding Motion to Dismiss, Adv. ECF No. 157 at 1.
[28] Order Regarding Motion to Dismiss, Adv. ECF No. 157 at 5.
[29] Order Regarding Motion to Dismiss, Adv. ECF No. 157 at 5.
[30] Order Regarding Motion to Dismiss, Adv. ECF No. 157 at 6–7.

**Second Amended Complaint and Second Motion to Dismiss**

In August 2026, the Trustee filed a Second Amended Complaint.[31] It repleads the constructive fraudulent transfer claim under § 544(b) and TUFTA and the disallowance claim under § 502(d).[32] The Trustee again seeks to recover the entire $1.1 billion or, alternatively, the $208 million Steward funded.[33] He alleges that MPT funded $925 million and Steward deposited $208.9 million into an escrow account that Steward established and MPT did not control, and that the escrow agent paid Tenet to satisfy Steward's obligations under the APA.[34]

The Second Amended Complaint now pleads what the Hospitals were worth when the transaction closed.[35] It starts with a premise: Steward bought an operating business from Tenet, not a collection of physical assets and book accounts.[36] The Trustee points to two figures for that business. He alleges that Tenet's July 2021 10-Q stated that the value of the Hospitals was $683 million.[37] He also alleges that under the comparable public company method, the business was worth $611.9 million in August 2021.[38] Using Steward's reimbursement rates and accounting for excess net working capital, he alleges that figure falls to $394 million.[39]

The Trustee separately values the real estate. Applying the income capitalization approach to the Hospitals' 2020 EBITDAR, he alleges the real estate was worth $440 million to $640 million.[40] Under the sales comparison approach, drawing on more than 180 hospital transactions between 2018 and 2022, he alleges a range of $450 million to $621 million.[41] He alleges that MPT paid $900 million for that real estate and Steward also committed to excessive lease payments to MPT.[42]

On Steward's financial condition, the Trustee alleges that Steward's liabilities exceeded its assets by $1.65 billion at the end of May 2021 and by about $1.89 billion at the end of 2021.[43] He alleges that Steward had inadequate working capital before and after the transaction. If it did not before, he alleges that the debt Steward took on to fund the purchase and its lease obligations to MPT pushed it into an inadequate capital position.[44] He alleges that Steward lost $407 million in 2020 despite government assistance, lost another $28.5 million in the quarter the

---

[31] Second Amended Complaint, Adv. ECF No. 164.
[32] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 77–88.
[33] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 83–84.
[34] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 34–35.
[35] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 36–62.
[36] Second Amended Complaint, Adv. ECF No. 164 ¶ 38.
[37] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 36–37.
[38] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 38–43.
[39] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 44–54.
[40] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 55–58.
[41] Second Amended Complaint, Adv. ECF No. 164 ¶ 59.
[42] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 60–62.
[43] Second Amended Complaint, Adv. ECF No. 164 ¶ 63.
[44] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 64–65.

transaction closed, and "believed and intended it would incur debts it could not pay as they came due."[45] As in the Amended Complaint, he also alleges that the Hospitals performed poorly after closing and could not be sold for a meaningful return in the bankruptcy cases.[46]

Tenet moved to dismiss again.[47] It renews several of its earlier arguments and raises new ones. On value, Tenet argues that the Trustee pleads values for the real estate and net working capital but still not for the equipment, leasehold improvements, inventory, receivables, or goodwill.[48] It argues that the Trustee's figures measure the wrong thing. In Tenet's view, the 10-Q reports book value rather than fair market value, an earnings multiple values an operating business when Steward bought assets, and the Trustee's adjustments for relief funding and reimbursement rates are subjective.[49] It argues that post-closing performance and the bankruptcy sale cannot establish a lack of value at closing.[50] According to Tenet, the real estate analyses value property Steward never owned because MPT paid the $900 million and acquired the real estate.[51] And it argues that the relief sought cannot be squared with the pleaded values, because Steward received more than $769 million on the Trustee's own figures.[52] It argues that the alternative claim for $208 million also fails once the $129 million in net working capital and the unpleaded values of the inventory, equipment, leasehold improvements, and goodwill are taken into account.[53]

On Steward's financial condition, Tenet argues that the Trustee's allegations are conclusory and that he does not plead that Steward intended or believed it would incur debts beyond its ability to pay.[54] Tenet also invokes judicial estoppel, which bars a party from taking a position inconsistent with one a court previously accepted. It argues that the doctrine bars the Trustee from alleging insolvency because Steward told this court and others, before and after filing for bankruptcy, that it was solvent and adequately capitalized.[55] Tenet argues the disallowance claim fails with the avoidance claim.[56]

The Trustee opposed.[57] He argues that he pleaded value using widely accepted methods, the analysis of Steward's own financial experts, and Tenet's 10-Q.[58] He argues that the APA reflects the purchase of a business and does not assign

---

[45] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 66–68, 80.
[46] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 72–76.
[47] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171.
[48] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 12–13.
[49] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 14–20.
[50] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 20–22.
[51] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 22–23.
[52] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 24–25.
[53] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 25.
[54] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 25, 29–31.
[55] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 26–29.
[56] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 31.
[57] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174.
[58] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174 at 9–22.

a value to each asset and liability.[59] He says that post-sale performance alone cannot establish a lack of reasonably equivalent value but argues the Court may still consider it.[60] He argues that the APA names Steward as the buyer, and how Steward financed the purchase does not change that Steward paid the full price.[61]

On financial condition, the Trustee argues that TUFTA does not require the transfer itself to cause the unreasonably small assets.[62] He argues that judicial estoppel does not apply because the earlier statements were not his, were not plainly inconsistent with his position, and were not accepted and relied upon by a court.[63] And he argues that Steward's negative net income when the transaction closed supports the inference that it intended to incur debts beyond its ability to pay.[64]

Tenet replied in support of the Motion to Dismiss.[65]

## Jurisdiction

The Court has jurisdiction under 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b). The Court has constitutional authority to enter final orders and judgments. *Stern v. Marshall*, 564 U.S. 462, 486–87 (2011). The Court also has jurisdiction over this dispute under the Confirmation Order entered in the bankruptcy case.

## Legal Standard

Federal Rule 8(a)(2), incorporated by Bankruptcy Rule 7008, requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "By requiring no more than a statement of the claim, Rule 8 establishes 'implicitly, but with unmistakable clarity,' . . . that evidence of the claim is not required" at the pleading stage. *Berk v. Choy*, 607 U.S. 187, 193 (2026) (quoting *Hanna v. Plumer*, 380 U.S. 460, 470 (1965)). Unless the Federal Rules single out a claim for special treatment, Rule 8 "sets a ceiling on the information that plaintiffs can be required to provide about the merits of their claims." *Id.* at 194. Constructive fraudulent transfer claims are analyzed by Rule 8(a) rather than Rule 9(b). *Sommers v. Capybara Cap., LLC (In re Anadrill Directional Servs. Inc.)*, No. 23-31199, Adv. No. 25-3036, 2026 WL 305023, at *5 (Bankr. S.D. Tex. Feb. 4, 2026).

On a motion under Rule 12(b)(6), this Court "asks only whether the complaint's factual allegations, if taken as true, 'state a claim to relief that is plausible on its face.'" *Berk*, 607 U.S. at 193 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

---

[59] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174 at 11–12.
[60] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174 at 22.
[61] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174 at 23–25.
[62] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174 at 29–30.
[63] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174 at 27–29.
[64] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174 at 30–31.
[65] Reply in Support of Motion to Dismiss Second Amended Complaint, Adv. ECF No. 178.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

Two limits on that inquiry bear on this motion. First, the presumption of truth attaches to factual allegations, not to legal conclusions or to "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Second, improbability is not implausibility. A complaint that satisfies Rule 8 "'may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable.'" *Berk*, 607 U.S. at 193 (quoting *Twombly*, 550 U.S. at 556). Thus, the question at this stage is whether the Trustee has pleaded plausible claims against Tenet.

**Documents Considered**

When evaluating whether a plaintiff has stated a claim, the Court generally may not consider matters outside the pleadings. FED R CIV. P. 12(d); *Berk*, 607 U.S. at 193; *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). The Court may, however, consider documents incorporated by reference in a complaint that are central to a plaintiff's claims. *Walker*, 938 F.3d at 735. The rationale is that a plaintiff who builds his claim on a document has adopted it and may not describe it selectively while withholding it from a court.

The APA satisfies that exception.[66] The Second Amended Complaint pleads the terms of the transaction the APA memorializes, relies on the purchase price it fixes, and depends on the assignment provision permitting Steward to convey the right to purchase the real property to MPT. The Court considers the APA.

The Trustee also attached a 10-Q form that Tenet filed with the SEC to its Opposition to the Motion to Dismiss.[67] The Court may consider a document attached to a response to a motion to dismiss when that document is sufficiently referenced in the complaint and its authenticity is without question. *Walch v. Adjutant Gen.'s Dep't of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008). The Court considers it to the extent that it is central to the Trustee's claims as part of the "elementary determination of whether a claim has been stated." *Walker*, 938 F.3d at 735 (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000)). The 10-Q is referred to in the Second Amended Complaint and central to the Trustee's valuation theory. *See* Second Amended Complaint, Adv. ECF No. 164 ¶¶ 36−37. The Court considers it for what it states, not for the truth of any contested valuation.

[66] Asset Purchase Agreement, Adv. ECF No. 172.
[67] Tenet's 10-Q Form, Adv. ECF No. 174, Exhibit 1.

Tenet asks the Court to consider several more documents, including decisions of the Delaware Court of Chancery, a debtor-in-possession term sheet, first-day declarations, and hearing transcripts.[68] None are referenced in the Second Amended Complaint. While the Trustee refers to some of these documents in his Opposition, it was only in response to Tenet's arguments.[69] To the extent Tenet offers these documents to establish the value of the Hospitals in August 2021 or Steward's insolvency—contested facts in this proceeding—the Court may not consider them at this stage.

## Analysis

### Count 12: Constructive Fraudulent Transfer under TUFTA

Under TUFTA,[70] "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:"

> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COM. CODE § 24.005(a)(2).

### The Second Amended Complaint Pleads a Transfer

The Second Amended Complaint pleads facts that allow the Court to draw the reasonable inference that Steward made a transfer. The Trustee alleges that in July 2021, MPT funded $925 million and Steward deposited $208.9 million into an escrow account established by Steward over which MPT had no control.[71] The Trustee alleges the escrow agent transferred the $1.1 billion to Tenet to satisfy Steward's payment obligations under the APA.[72] Taking all well-pleaded facts as true, the Trustee has pleaded a transfer made by Steward.

---

[68] *See* Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 7, 26−29 (Delaware decisions); *id.* at 7 (DIP term sheet); *id.* at 7, 27 (first-day materials); *id.* at 19 (third-party website).
[69] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174 at 27–29.
[70] The Trustee proceeds under TUFTA by way of 11 U.S.C. § 544(b); Second Amended Complaint, Adv. ECF No. 164 ¶ 83.
[71] Second Amended Complaint, Adv. ECF No. 164 ¶ 34.
[72] Second Amended Complaint, Adv. ECF No. 164 ¶ 35.

Tenet argues that the Trustee "cannot plead around the fact that MPT, and not Steward, paid $900 million of the purchase price" and that "the APA makes clear that Steward never came out of pocket for any of that $900 million, never received the real estate, and never suffered a loss for any deficiency in the value of the real estate."[73] The Trustee argues that the APA defines Steward as the buyer, who was permitted to assign its right to purchase and that Steward paid the entire amount to Tenet.[74]

The APA does not resolve the point in Tenet's favor at this stage. It names Steward as the buyer[75] and permits Steward to assign its right to purchase the real property, which Steward did.[76] That structure does not foreclose the Trustee's allegations that the full purchase price passed through an escrow account that Steward established and was paid to satisfy Steward's obligations under the APA. Whether MPT's funds should be treated as Steward's for purposes of the transfer, and whether Steward bore any loss on the real estate, are questions for a developed record. On the latter point, the Trustee alleges that Steward committed to excessive lease payments to MPT.[77]

## The Second Amended Complaint Pleads Lack of Reasonably Equivalent Value

To state a constructive fraudulent transfer claim under TUFTA, a plaintiff must plead facts showing a lack of reasonably equivalent value. *See In re Life Partners Holdings, Inc.*, 926 F.3d 103, 120 (5th Cir. 2019) (citing *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562, 566 (Tex. 2016)); TEX. BUS. & COM. CODE §§ 24.005(a)(2), 24.006(a).

TUFTA defines the operative term. Reasonably equivalent value "includes without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction." TEX. BUS. & COM. CODE § 24.004(d). The Texas Supreme Court has explained that the statute's "use of the conditional past-perfect tense 'would have' illustrates, whether an exchange was made for reasonably equivalent value is evaluated objectively at the time of the transfer, not in retrospect." *Janvey*, 487 S.W.3d at 574. The inquiry is thus fixed at the moment of exchange.

The Second Amended Complaint pleads facts establishing the inference that Steward did not receive reasonably equivalent value at the moment of the transaction.

Looking to Tenet's 10-Q filed in July 2021, the Trustee alleges that "[a]ccording to Tenet, the Miami Hospitals, including real estate and operations, were worth $683 million—over $400 million less than the $1.1 billion SHC System

---

[73] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 22.
[74] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174 at 23.
[75] Asset Purchase Agreement Schedule A, Adv. ECF No. 172.
[76] Asset Purchase Agreement Article 10.5, Adv. ECF No. 172.
[77] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 60–62.

paid."[78] He alleges that the value of the business, including the real property, net working capital, accounts receivable, inventories, equipment, leasehold improvements, and goodwill was $611.9 million in August 2021 under the comparable public company method, which is about 55% of what Steward paid to Tenet.[79] The Trustee alleges that after taking into account Steward's reimbursement rates and excess net working capital, the Hospitals were actually worth $394 million.[80]

The Trustee alleges that the real estate was worth $440 million to $640 million using the EBITDAR for 2020 under the income capitalization approach.[81] And $450 million to $621 million using data from 2018 to 2022 under the sales comparison approach.[82] The Trustee also alleges that when taking into account the rent that Steward agreed to pay MPT, "[t]he discounted present value of the cash flow from the lease obligation to MPT was between $536 and $682 million."[83]

These allegations address what the Hospitals, including their assets and real estate, were worth at the time of the transaction. The counts in the Amended Complaint that were dismissed contained no such allegations. Tenet argues that "the Trustee reverts to the same subjective methodology the Court rejected in the last complaint: applying a multiple to projections of Steward's earnings."[84] But the Court in its previous order did not approve or reject any valuation methods. The Court found that (i) the Amended Complaint alleged that Steward's projection of performance was untethered from historical performance and (ii) what the Hospitals earned in the years that followed but did not contain allegations of what the Hospitals were worth in 2021.[85]

Tenet argues the valuation methods used by the Trustee are incorrect or subjective, and do not reflect the assets that were actually transferred.[86] The Trustee argues these methods are widely accepted, and that he used publicly available information that reflects what Steward and Tenet believed the value of the Hospitals to be in his analysis.[87] Disputes about the correct valuation method would require a more developed record and cannot be resolved at the Rule 12(b)(6) stage. And even setting the 10-Q aside, the allegations of the comparable public company and real estate methodologies are enough at this stage.

---

[78] Second Amended Complaint, Adv. ECF No. 164 ¶ 36.
[79] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 38, 43.
[80] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 44–54.
[81] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 55–58.
[82] Second Amended Complaint, Adv. ECF No. 164 ¶ 59.
[83] Second Amended Complaint, Adv. ECF No. 164 ¶ 60.
[84] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 2.
[85] Amended Complaint, Adv. ECF No. 76 ¶¶ 259−61; Order Regarding Motion to Dismiss, Adv. ECF No. 157 at 5.
[86] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 14–20.
[87] Opposition to the Motion to Dismiss Second Amended Complaint, Adv. ECF No. 174 at 9–22.

Tenet's related argument that the Second Amended Complaint pleads values for the real estate and net working capital but not for the equipment, inventory, leasehold improvements, or goodwill does not change the result.[88] That argument assumes that reasonably equivalent value must be established by summing the value of each asset category. But the Trustee pleads a different theory: that Steward acquired an operating business, and that the business as a whole—including those very categories—was worth less than what Steward paid.[89] Under the comparable public company method the Trustee invokes, the enterprise valuation of about $394 million is pleaded to capture the entire going concern, equipment, inventory, leasehold improvements, and goodwill included, rather than leaving those categories at zero. Whether a going-concern valuation or Tenet's asset-by-asset summation is the correct measure of value for this transaction is a merits question the Court cannot resolve at this stage. It is enough that the Trustee has pleaded facts on the value of what Steward received.

Tenet also argues that the relief sought by the Trustee, recovering $1.1 billion or in the alternative, $208 million, is incompatible with the allegations of value in the Second Amended Complaint.[90] But allegations of improbability do not mean implausibility. *See Berk*, 607 U.S. at 193 (quoting *Twombly*, 550 U.S. at 556). The relief the Trustee seeks is pleaded with an alternative request, and his valuations are pleaded as ranges. Reading the high end of a pleaded range as an admission of the value Steward received, while disregarding the Trustee's principal allegation that the business as a whole was worth about $365 to $394 million, would resolve the inference against the pleader rather than in his favor. Rule 12 does not permit such an inference. Regardless, the amount the Trustee may ultimately recover is not a question for a motion that tests only the sufficiency of the allegations, and the Court does not resolve it here.

In sum, taking his allegations as true, the Trustee has pleaded a lack of reasonably equivalent value at the time of the transaction.

### The Second Amended Complaint Pleads Steward's Financial Condition

The Second Amended Complaint pleads facts establishing the inference that Steward was engaged or about to engage in a transaction for which its remaining assets were unreasonably small in relation to the transaction. The Trustee alleges that Steward's liabilities exceeded its assets by $1.65 billion at the end of May 2021.[91] He alleges that after the transaction closed, Steward's liabilities exceeded assets by nearly $1.89 billion.[92] The Trustee also alleges that Steward had negative net working capital before and after entering the APA and the transaction, and that even if it did not, taking on $200 million in debt, the proceeds of which were

[88] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 12–14.
[89] Second Amended Complaint, Adv. ECF No. 164 ¶ 38.
[90] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 24–25.
[91] Second Amended Complaint, Adv. ECF No. 164 ¶ 63.
[92] Second Amended Complaint, Adv. ECF No. 164 ¶ 63.

transferred to Tenet, and excessive leases, pushed Steward into an inadequate capital position.[93]

Tenet argues that § 24.005(a)(2)(A) requires the Trustee to plead that the transfer itself caused Steward's unreasonably small assets, and that a debtor already in that condition cannot avoid a later transfer that merely worsened it.[94] The Court need not decide whether subsection (A) contains that causal requirement.[95] Even under Tenet's reading, the Second Amended Complaint states a claim. The Trustee alleges that Steward's liabilities exceeded its assets by about $1.89 billion after the transaction.[96] He alleges in the alternative that if Steward's working capital was adequate before closing, the $200 million in debt it took on to fund the purchase and its lease obligations to MPT pushed it into an inadequate capital position.[97] A party may plead in the alternative, even inconsistently. FED. R. CIV. P. 8(d)(2)–(3). And the alternative allegation is not conclusory. It identifies the debt, its amount, and the lease obligations that allegedly caused the shortfall. Taken as true, those facts state a plausible claim that the remaining assets of Steward were unreasonably small.

The Second Amended Complaint also pleads facts that allow the Court to infer that Steward intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. The Trustee alleges Steward suffered a net operating loss of $439 million and had negative net income of $407 million in 2020, despite government assistance.[98] And that in Q3 of 2021, when the transaction took place, Steward had a negative net income of $28.5 million.[99] The Trustee alleged that Steward "believed and intended it would incur debts it could not pay as they came due."[100]

Tenet argues that the Trustee did not allege Steward intended to incur, or believed, or reasonably should have believed that it would incur debts beyond its ability to pay.[101] The Court disagrees. The Trustee alleges that Steward lost $407 million in 2020 and was still losing money in the quarter the transaction closed.[102] He alleges that Steward then took on $200 million in debt and lease obligations to MPT to complete the purchase.[103] Taken as true, those facts support the inference

---

[93] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 64–65.
[94] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 29–30.
[95] The Texas Legislature also knew how to require a causal link when it wanted one. Section 24.006(a) reaches a debtor that "became insolvent as a result of the transfer or obligation." TEX. BUS. & COM. CODE § 24.006(a). Section 24.005(a)(2) contains no comparable language.
[96] Second Amended Complaint, Adv. ECF No. 164 ¶ 63.
[97] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 64–65.
[98] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 66–67.
[99] Second Amended Complaint, Adv. ECF No. 164 ¶ 68.
[100] Second Amended Complaint, Adv. ECF No. 164 ¶ 80.
[101] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 30–31.
[102] Second Amended Complaint, Adv. ECF No. 164 ¶¶ 67–68.
[103] Second Amended Complaint, Adv. ECF No. 164 ¶ 69.

that Steward reasonably should have believed it would incur debts beyond its ability to pay as they became due.

**Judicial Estoppel Does Not Bar the Trustee's Allegations at This Stage**

Tenet separately argues that the Trustee is judicially estopped from alleging that Steward was insolvent, because Steward represented to the Delaware Court of Chancery and in filings that it was solvent and not on the verge of bankruptcy.[104] Judicial estoppel is an affirmative defense.[105] And dismissal under Rule 12(b)(6) may be proper based on a successful affirmative defense if it appears based on the facts pleaded and judicially noticed. *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008).

Judicial estoppel cannot be resolved at this stage. The statements Tenet relies on appear to have been made by Steward and its officers in a Delaware court, and none appear in or are incorporated into the Second Amended Complaint. The Court cannot determine whether the Delaware court accepted and relied upon Steward's solvency representation in subsequent rulings. It would require the Court to look beyond the pleadings.

The Court may take judicial notice that those statements were made, but not of their truth. *See Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 255 (5th Cir. 2021). Nothing properly before the Court shows that a court accepted them. Tenet may reassert the defense on a developed record.

**Count 14: Disallowance of Tenet's Claim**

**The Second Amended Complaint Pleads Disallowance of Tenet's Claim**

The Trustee's claim under 11 U.S.C. § 502(d) is derivative of the avoidance claim. Section 502(d) directs disallowance of the claim of an entity that is "a transferee of a transfer avoidable under section . . . 544." A trustee need not obtain a judgment on the avoidance claim before pleading disallowance; the two may be asserted together. *In re Life Partners Holdings*, 926 F.3d at 122; *see also Seitz v. Frorer (In re Covenant Partners, L.P.)*, 531 B.R. 84, 100 (Bankr. E.D. Pa. 2015) (declining to dismiss § 502(d) claim because of ruling in the trustee's favor on the avoidance counts); *Alameda Rsch. Ltd. v. Giles (In re FTX Trading Ltd.)*, Case No. 22-11068, Adv. Nos. 23-50379 & 23-50380, 2024 WL 4562675, at *15 (Bankr. D. Del. Oct. 23, 2024) (denying dismissal of § 502(d) claim because the underlying fraudulent transfer claims survived).

Because the Trustee has plausibly stated his constructive fraudulent transfer claim against Tenet, he has also stated a claim for disallowance of Tenet's claim under § 502(d).

---

[104] Motion to Dismiss Second Amended Complaint, Adv. ECF No. 171 at 26−29.

[105] *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) (judicial estoppel may be resolved on a Rule 12(b)(6) motion where the defense appears on the face of the pleadings and in judicially noticeable facts), *abrogated on other grounds by Keathley v. Buddy Ayers Constr., Inc.*, 608 U.S. 647 (2026).

## Conclusion

For the reasons stated above, it is ORDERED that Tenet's Motion to Dismiss the Second Amended Complaint is denied.

Signed: November 20, 2026

Christopher Lopez
United States Bankruptcy Judge